**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of<br><br>MARINER ATLANTIC MULTI-STRATEGY, LLC,<br><br>Applicant,<br><br>Pursuant to 28 U.S.C. § 1782 for Judicial Assistance in Obtaining Evidence for Use in Foreign Proceedings Pending in the Swiss Confederation. | Case No. 1:26-mc-479 |

**MEMORANDUM OF LAW IN SUPPORT OF MARINER ATLANTIC MULTI-STRATEGY, LLC'S *EX PARTE* PETITION FOR JUDICIAL ASSISTANCE IN AID OF FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

Applicant, Mariner Atlantic Multi-Strategy, LLC ("**Applicant**" or "**Mariner**"), respectfully submits this *Ex Parte* Petition and Supporting Memorandum of Law for Judicial Assistance in Aid of Foreign Proceedings Pursuant to 28 U.S.C. §1782 (the "Petition") and requests the issuance of an order permitting it to obtain documentary discovery from the Federal Reserve Bank of New York (the "**Federal Reserve**") and the Clearing House Interbank Payments System ("**CHIPS**") (together, the "**Discovery Targets**") for use in currently pending legal proceedings in Switzerland.

In support of this Petition, Applicant states as follows:

## I. FACTUAL BACKGROUND

1. The facts relevant to this Petition are set forth below and in the accompanying Declaration of Guillaume Tattevin, Swiss legal counsel (the "**Tattevin Declaration**" or "**Tattevin Decl.**"). The facts stated in the Tattevin Declaration are fully incorporated herein by reference and provide a more detailed background than the summary that follows.

2. Mariner is a limited liability company incorporated under the laws of Delaware,

United States, which is managed by Mariner Investment Group, LLC, an investment firm founded in 1992 that operates in both public and private markets.[1] Mariner's principal place of business is located at 299 Park Avenue, 5th Floor, New York, New York 10171.[2]

3. On June 26, 2026, Mariner entered into a certain Facilities Agreement (the "Facilities Agreement") with Radiant World Corporation Pte. Ltd. ("**Radiant World Corporation**"), a Singaporean company, and Radiant World Holding Limited ("**Radiant World Holding**"), a Hong Kong company (together, "**Radiant**" or the "**Radiant Group**"), under which Mariner made available to Radiant two revolving credit facilities totaling US $50 million for the purpose of supporting Radiant's purported trading activities in metals. Tattevin Decl. ¶ 3.

4. On or around June 30, 2026, Radiant made four drawdown requests totaling US $48,572,444, which were granted by Mariner and disbursed to Radiant's bank account held at Emirates NBD in the United Arab Emirates, as directed by Radiant. *Id.* ¶ 4.

5. The release of funds was secured by Radiant World Corporation's assignment to Mariner of purported receivables arising from certain trading contracts for iron ore and copper cathodes with purported buyers, including Quanterra International Limited ("**Quanterra**"), Aspira Co. Pte. Ltd. ("**Aspira**"), Grand Promise Enterprise Limited ("**Grand Promise**"), and Sapphire Minmetals Corporation Ltd. ("**Sapphire**"). *Id.* ¶ 5.

6. However, after the funds were released, Mariner learned that Radiant systematically had falsified commercial documents in order to simulate transactions and thereby obtain financing from international lenders, including Mariner, through fictitious trades. *Id.* ¶ 6.

7. As reported by *Bloomberg* and other media outlets, several of Radiant's purported counterparties—including Quanterra, Aspira, Grand Promise, and Sapphire—in fact are entities

[1] *See https://www.marinerinvestment.com/about.*
[2] *See https://www.marinerinvestment.com/contact.*

controlled by Radiant's founder, Pinkesh Nahar himself, and/or of which he is the beneficial owner. *Id.* The scale of this blatant fraud is considerable: the value of the fraudulent invoices issued as collateral could reach US $1 billion, which would make it one of the largest frauds in the commodities trading sector since the Enron scandal. *Id.*

8. As a result of this fraud, Mariner has been unable to recover any of the US $48,572,444 that it transferred to Radiant. *Id.* ¶ 10.

9. Accordingly, on or about September 14, 2026, Mariner filed a criminal complaint with the Geneva Public Prosecutor's Office in Switzerland (the "**Swiss Criminal Complaint**") for fraud and money laundering under Articles 146 and 305 *bis* of the Swiss Criminal Code against Radiant World Corporation SA (Radiant's Geneva-based subsidiary), Sapphire Minmetals Corporation SA, Radiant World Corporation, Radiant World Holding, Sapphire, Pinkesh Nahar, Bhupeshkumar Gejvala, and others (the "**Swiss Proceedings**"). *Id.* ¶¶ 7-8. Mariner has requested the opening of a criminal investigation, searches of premises in Geneva, and the seizure of bank accounts and assets in Switzerland. *Id.* ¶ 7.

## II. JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1782, as this is an application for discovery made by a party to pending proceedings before Swiss authorities, seeking the production of documents located within this District and to be used in the Swiss Proceedings.

11. The Federal Reserve Bank of New York is located at 33 Liberty Street, New York, NY 10045, within this District.

12. CHIPS is operated by The Clearing House Payments Company L.L.C., which is headquartered at 450 West 33rd Street, New York, NY 10001, within this District.

13. Venue in this District is appropriate because the Discovery Targets are found in this District.

**III. ARGUMENT**

14. As discussed below, this Petition meets the statutory requirements of Section 1782, as well as the discretionary factors discussed in the relevant case law. Applicant thus respectfully requests that its Petition for discovery be granted forthwith.

**a. Standard for Granting Section 1782 Petitions**

15. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). "Congress substantially broadened the scope of assistance federal courts could provide for foreign proceedings" pursuant to Section 1782 to include "documentary and other tangible evidence as well as testimony." *Id.* at 247–48.

16. To that end, this Circuit has recognized the liberal policy in favor of granting petitions for judicial assistance under Section 1782. *See, e.g., Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("The goals of the statute are to provide 'equitable and efficacious' discovery procedures in United States courts 'for the benefit of tribunals and litigants involved in litigation with international aspects[.]'"); *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015) ("[T]he twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.") (internal citations omitted).

17. The statute reads, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use

> in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.
>
> The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
> 28 U.S.C. § 1782(a).

18. The Supreme Court in *Intel* thus distilled Section 1782's language into a two-part inquiry: first, whether a district court is authorized to grant relief under the statute; and second, whether the court should grant relief in its broad discretion pursuant to four specific discretionary factors. *Intel*, 542 at 263–64; *Brandi-Dohrn*, 673 F.3d at 80 ("Once the statutory requirements are met, a district court is free to grant discovery in its discretion[.]"); *Ijk Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 676 (2d Cir. 2022) (same).

19. Finally, a Section 1782 petition typically is presented and granted *ex parte* in this Circuit, to allow the applicant to serve the discovery requests. *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."); *see also O'Keefe v. Adelson (In re O'Keeffe)*, 650 Fed. Appx. 83, 85 (2d Cir. 2016) (rejecting suggestion that filing Section 1782 petition *ex-parte* was improper or impermissible); *Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 Fed. Appx. 7, 10 (2d Cir. 2018) ("[T]his court has decided appeals from motions to quash ex parte § 1782 subpoenas without identifying any impropriety in the ex parte nature of the § 1782 application.").

**b. <u>The Petition Meets the Section 1782 Statutory Requirements for Relief</u>**

20. A district court has authority pursuant to Section 1782 to grant an application for judicial assistance if three *prima facie* requirements are met: (1) the person from whom discovery is sought resides or can be found in the district in which the petition is filed; (2) the evidence is "for use in a proceeding in a foreign or international tribunal"; and (3) the request is made "by a foreign or international tribunal" or by "any interested person." 28 U.S.C. § 1782(a); *Brandi-Dohrn*, 673 F.3d at 80.

21. As discussed below, Applicant's Petition indisputably meets all three statutory requirements, thus authorizing this Court to grant the Petition.

***i. The Discovery Targets Are Found in this District***

22. For purposes of an application pursuant to Section 1782, the statute's "resides or is found" language "extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).

23. The Federal Reserve Bank of New York is located within this District at 33 Liberty Street, New York, NY 10045.

24. CHIPS is operated by The Clearing House Payments Company L.L.C., which is headquartered at 450 West 33rd Street, New York, NY 10001, within this District.

25. Both Discovery Targets are thus "found" in this District for purposes of Section 1782. Applicant's Petition thus meets the first statutory requirement.

***ii. The Discovery Sought is for Use in the Foreign Proceedings***

26. The "for use" requirement is satisfied by showing the discovery sought is intended for use in a foreign proceeding. *See Intel*, 542 U.S. at 258. To satisfy this requirement, the discovery sought "need not be necessary for the party to prevail in the foreign proceeding[.]" *Mees*, 793 F.3d

at 298. Instead, "[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase [his or] her chances of success." *Id.* at 299. As such, "[a] district court's focus in considering a request under § 1782 is not on the merits of the proposed claim, but on the movant's 'practical ability to inject the requested information into a foreign proceeding.'" *Ijk Palm*, 33 F.4th at 680 (quoting *Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121, 132 (2d Cir. 2017)). In other words, to meet this requirement, the discovery must merely "be employed with some advantage or serve some use in the proceeding." *Bouvier*, 869 F.3d at 132 (internal citations omitted).

27. As explained above, Mariner is the complainant in the Swiss Proceedings. Thus, the discovery sought—wire transfer and payment message records relating to Radiant's (and their affiliated entities' and persons') Emirates NBD accounts—is directly relevant to these proceedings as it would be used by the Swiss authorities to evidence fraudulent transactions. Tattevin Decl. ¶¶ 11-12; *see also Optimal Invs. Servs, S.A. v. Berlamont*, 773 F.3d 456 (2d Cir. 2014) (finding that application related to criminal complaint in Switzerland satisfied the "for use" standard). Here, the proceedings have already been initiated with the filing of a criminal complaint on or around September 14, 2026, and thus the proceedings currently are pending. Tattevin Decl. ¶ 8.

28. Finally, the wire transfer records will allow Mariner to trace the movement of funds to and from Radiant's (and their affiliated entities' and persons') bank accounts, potentially demonstrating the fraudulent transactions, including what Radiant did with Mariner's funds. *Id.* ¶¶ 11-12. For example, Mariner may be able to ascertain whether Radiant paid money to any suppliers for the cargoes it purported to sell, thereby helping to demonstrate the fraud in support of the Swiss Proceedings. *Id.* ¶ 16. Mariner also may be able to trace the movement of its funds to show the fraud against it. *Id.*

29. The discovery therefore is directly relevant to the Swiss Proceedings, and Applicant will be able to use the information in the Swiss Proceedings to support its allegations of fraud. Applicant's Petition thus meets the second statutory requirement.

***iii. The Discovery is Being Sought by an "Interested Person"***

30. The Supreme Court in *Intel* explained that "interested persons" within the meaning of Section 1782 are those with significant "participation rights in [the] proceedings." *Intel*, 542 U.S. at 256. Thus, while an applicant may lack formal "party" or "litigant" status, the party must necessarily have "significant procedural rights" in the proceedings to be considered an "interested person." *Id.* at 255. The Supreme Court further elaborated that the applicants in *Intel* had participation rights in the proceedings because they had the right to (1) prompt an investigation, (2) submit evidence for consideration, and (3) proceed to court for judicial review and/or appeals. 542 U.S. at 256. "Given these participation rights, a complainant 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term." *Id.* As such, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Id.*

31. Here, Mariner is the complainant in the Swiss Proceedings and thus is an "interested person" for purposes of Section 1782. Moreover, Mariner possesses a reasonable interest in obtaining judicial assistance from this Court because it seeks to trace funds transferred to Radiant and to demonstrate the fraudulent scheme perpetrated against it. *In re Berlamont*, No. 14-MC-190 (JSR), 2014 U.S. Dist. LEXIS 111594, at *1 (S.D.N.Y. Aug. 4, 2014) (complaining witness in Swiss criminal investigation was interested party), *aff'd*, 773 F.3d 456, 457, 461 (2d Cir. 2014) ("Swiss criminal investigation in the instant case is exactly the type of proceeding that" Section 1782 "intended to reach"); *see also In re VSMPO-AVISMA Corp.*, No. 25-MC-444 (VSB) (VF),

2026 U.S. Dist. LEXIS 115930, at *33 (S.D.N.Y. May 26, 2026) (same, applicant was "the alleged victim of the fraud that is the subject of the investigation and prosecution in Russia").

32. Applicant's Petition thus meets the third and final statutory requirement, authorizing this Court to grant the Petition if the discretionary factors are also met.

**c. <u>The Petition Meets the Section 1782 Discretionary Factors for Relief</u>**

33. If the statutory requirements are met, then Section 1782 "authorizes, but does not require, a federal district court to provide assistance[.]" *Intel*, 542 U.S. at 255. A district court then must consider the four discretionary factors articulated by the Supreme Court in *Intel* to decide whether relief is warranted: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is otherwise unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264–65; *Mees*, 793 F.3d at 298.

34. As discussed below, the four discretionary *Intel* factors weigh heavily in favor of granting the relief requested herein.

***i. The Discovery Targets Are Not Participants in the Foreign Proceeding***

35. First, the Supreme Court held that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. This is because a "foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence[,]" whereas "nonparticipants in foreign

proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

36. Here, the Discovery Targets are not parties to the Swiss Proceedings, nor are they expected to ever become parties to those proceedings. Because the Federal Reserve and CHIPS are located in the United States, it is not otherwise possible to directly compel them to provide the discovery sought as they are located outside the jurisdiction of the Swiss authorities which will preside over the Swiss Proceedings. Tattevin Decl. ¶ 24.

37. The first discretionary *Intel* factor thus weighs in favor of granting the Petition.

***ii. Swiss and Other Foreign Courts are Receptive to Judicial Assistance***

38. Second, the Supreme Court in *Intel* held that "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

39. As such, the Supreme Court recognized that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Id.* at 261. Likewise, "[a] foreign tribunal's reluctance to order production of materials present in the United States similarly may signal no resistance to the receipt of evidence gathered pursuant to § 1782(a)." *Id.* at 246. In the Second Circuit, "[a] court should deny discovery on the basis of lack of receptiveness **<u>only</u> where it is provided with 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782**.'" *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176–77 (S.D.N.Y. 2020) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)) (emphasis added); *see also In re Banco Santander (Brasil) S.A.*, 2022 U.S. Dist. LEXIS 64246, at *4–5 (S.D.N.Y. Apr. 6, 2022) (same).

40. As described above, Mariner has filed a criminal complaint with the Geneva Public Prosecutor's Office. The evidence sought through this Petition—wire transfer and payment message records—is directly relevant to demonstrating the fraud perpetrated by Radiant by showing the movement of fraudulently obtained funds.

41. Swiss courts are receptive to evidence obtained through Section 1782 discovery. Tattevin Decl. ¶ 24. Indeed, several courts adjudicating Section 1782 petitions involving foreign proceedings in Switzerland have found that this second factor weighs in favor of the applicant. *See, e.g., In re Watkins,* No. 24-MC-0023 (JGK) (RFT), 2024 U.S. Dist. LEXIS 132673, at *22 (S.D.N.Y. July 26, 2024) (second factor weighed in favor where applicant's Swiss law expert stated that "Swiss courts are receptive to evidence obtained through the use of Section 1782"); *In re Alberto Safra for An Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, No. 21-MC-640 (GHW) (JLC), 2022 U.S. Dist. LEXIS 150169, at *15 (S.D.N.Y. Aug. 22, 2022) (second factor weighed in favor of applicant where respondent was not able to present any authoritative proof that Swiss authorities would not be receptive to the discovery obtained).

42. The second discretionary *Intel* factor thus weighs in favor of granting the Petition.

***iii. The Petition Does Not Attempt to Circumvent Foreign Restrictions***

43. Next, the Supreme Court in *Intel* explained that district courts "could consider whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The statute imposes no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to a Section 1782 request in the United States. *Id.* at 260–61.

44. To that end, the Second Circuit has instructed that proof-gathering restrictions "are

best understood as rules akin to privileges that prohibit the acquisition or use of certain materials[.]" *Mees*, 793 F.3d at 303 n.20. As such, "there is a difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a mechanism for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." *Accent Delight Int'l v. Sotheby's, Inc. (In re Accent Delight Int'l)*, 791 F. App'x 247, 251 (2d Cir. 2019); *Mees*, 793 F.3d at 303 n.20 ("That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means.").

45. Here, Mariner's Swiss counsel has confirmed that the evidence sought in this Petition does not circumvent any proof-gathering restrictions under Swiss law (nor are there any rulings in the pending Swiss Proceedings which would prevent Mariner from seeking the information sought here). Tattevin Decl. ¶ 24. Accordingly, the third discretionary *Intel* factor also weighs heavily in favor of granting the Petition.

***iv. The Discovery Requests are not Unduly Burdensome***

46. The Supreme Court in *Intel* held that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. The Second Circuit subsequently established that a district court evaluating a Section 1782 petition "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Nevertheless, the Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have . . . by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302 (quoting *Euromepa*, 51 F.3d at 1101).

47. The discovery Mariner seeks in its Petition is not unduly intrusive or burdensome. As seen in the proposed subpoenas attached as to the Declaration of Jillian Fitzpatrick ("**Fitzpatrick Declaration**") as Exhibits A & B, Mariner's requests are narrowly tailored to seek wire transfer and payment message records relating to Radiant's (and their affiliated entities' and persons') Emirates NBD accounts in the UAE, in which CHIPS and/or the Federal Reserve acted as either a direct transfer bank or an intermediary/correspondent bank. In effect, this would cover most, if not all, U.S. Dollar transfers to and from the accounts. This request is narrowly tailored to only cover transactions beginning six months prior to Mariner's July 1, 2026 transfer to Radiant through the date in which the Petition is granted.

48. The information sought is of the kind that CHIPS and the Federal Reserve maintain in the ordinary course of their operations and lends itself to identification and production without undue expense or burden. Also, the production of electronically stored, searchable payment records by the Discovery Targets will not create an undue burden, especially when the requests are narrowly drawn as outlined in the proposed subpoenas. Tattevin Decl. ¶ 25. Thus, the scope of the proposed subpoenas here is clearly reasonable and proportional to the needs in the Swiss Proceedings, and the fourth *Intel* factor also weighs in favor of granting the Petition.

49. As a result, this Court should find that all four *Intel* factors weigh heavily in favor of granting Mariner's Petition and should allow the discovery sought through this Petition.

### d. The Petition Should be Granted *Ex Parte*

50. Section 1782 petitions typically are presented and granted *ex parte* to allow the applicant to serve the discovery requests. Once served with the subpoenas, the Discovery Targets can respond to the discovery, including by raising any objections with this Court. The Discovery Targets' due process rights are not violated because they can later challenge any discovery request

by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3). *See Gushlak*, 486 F. App'x at 217.

51. Here, Mariner respectfully requests that this Petition be granted *ex parte*, as is proper and in keeping with this District's regular course of practice.

## IV. CONCLUSION

WHEREFORE, Applicant, Mariner Atlantic Multi-Strategy, LLC, respectfully requests that this Court enter an *ex parte* order granting this Petition pursuant to 28 U.S.C. § 1782, granting Applicant leave to serve the Discovery Targets with subpoenas substantially similar to those attached to the Fitzpatrick Declaration as Exhibits A & B, reserving jurisdiction to grant Applicant leave to serve any additional subpoenas as may be necessary to obtain the evidence described in this Petition, and granting any further relief as the Court deems just and proper.

Dated: September 29, 2026

Respectfully submitted,

**REED SMITH LLP**

*/s/ Jillian Fitzpatrick*
Jillian Fitzpatrick
599 Lexington Avenue
New York, NY 10022
(212) 521-5400
Email: jfitzpatrick@reedsmith.com

*Counsel for Applicant Mariner Atlantic Multi-Strategy, LLC*

OF COUNSEL:
(*pro hac vice* forthcoming)

Edward M. Mullins (FL Bar No. 863920)
Felipe Berer (D.C. Bar No. 492352)
Reed Smith LLP
200 South Biscayne Blvd, Suite 2600
Miami, FL 33131
(786) 747-0200
Email: emullins@reedsmith.com
Email: fberer@reedsmith.com